AO 106 (Rev. 06/09)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information Associated with Email Addresses and Chat )   Case No. 1:17-sw-270
Addresses That Are Stored at Premises Controlled by )
Yahoo! Inc. )
)

MAY 2 2 2017

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A (Property to be Searched)

located in the _____ Eastern _____ District of _____ Virginia _____, there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B (Items to be Seized).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1343 and 1349 | Wire fraud and conspiracy to commit wire fraud (respectively) |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:

Jamar K. Walker

_____
*Applicant's signature*

M. J. MCGILLICUDDY
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/22/17

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, VA

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the following email and/or chat addresses that are stored at premises owned, maintained, controlled, or operated by Yahoo! Inc., a company headquartered at 701 First Avenue, Sunnyvail, California 94089:

- aldoanthony63@yahoo.com

- anthonyaldo280@yahoo.com

- "anthonyaldo716" (Yahoo Messenger user name)

- "anthony aldo" (Yahoo Messenger user name)

- larry_anderson2000@yahoo.com

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Yahoo! Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.      The contents of all emails and/or chat messages associated with the account, including stored or preserved copies of emails and/or chat messages sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.      The types of service utilized;

d.      All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.       All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

f.       For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1349 (Conspiracy) and 18 U.S.C. § 1343 (Wire Fraud) on or after November 1, 2014, those violations involving unidentified individuals using the names of Anthony Aldo, Larry Anderson, Sandra Nelson, Charles Rene, and Christ Uba including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Communications with C.H. and/or J.V.R.;

(b) Communications related to AGIP Investment International, Capital Funds Investment International, Capital Funds Magellan shares, or Springdale Credit Union PLC;

(c) Evidence indicating how and when the email and/or chat account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

(d) Evidence indicating the email and/or chat account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH EMAIL AND CHAT ADDRESSES THAT ARE STORED AT PREMISES CONTROLLED BY YAHOO! INC. | 1:17sw270    MAY 2 2 2017 <br><br> **Filed Under Seal** <br> **Pursuant to Local Rule 49(b)** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael J. McGillicuddy, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"), assigned to its Washington Field Office.  I have been employed by the FBI for more than 11 years.  I am currently assigned to a securities fraud squad which shares the Washington Field Office's investigative responsibility for complex financial crimes.  I have participated in numerous criminal investigations to include violations related to corporate fraud, securities fraud, mail fraud, wire fraud, money laundering, and obstruction of justice.  Prior to joining the FBI, I was a forensic accountant for an economic consulting firm.  I am a Certified Public Accountant and a Certified Fraud Examiner.

2.      I make this affidavit in support of an application for a search warrant for information associated with certain accounts that are stored at premises controlled by Yahoo! Inc. ("Yahoo"), an electronic mail ("email") provider headquartered at 701 First Avenue, Sunnyvale, California 94089.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Yahoo to

disclose to the government the information (including the content of communications) further described in Section I of Attachment B (the "Target Accounts"). Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the computer systems of Yahoo contain evidence, fruits, and instrumentalities with respect to the Target Accounts of violations of 18 U.S.C. § 1349 (Conspiracy) and 18 U.S.C. § 1343 (Wire Fraud). More specifically, as set forth in greater detail below, the documents and other information that I and other law enforcement agents have reviewed support the conclusion that there is probable cause to believe that unidentified individuals using the names Anthony Aldo, Larry Johnson, Sandra Nelson, Charles Rene, and Christ Uba engaged in a "romance" scheme to defraud a victim by luring the victim into paying them advance fees or otherwise loaning them thousands of dollars based on material and fraudulent misrepresentations. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

4.     The information contained in this affidavit is based on my personal knowledge, interviews of witnesses, review of emails and other documents, information communicated to me by other law enforcement personnel with knowledge of this investigation, information communicated to law enforcement by other United States government personnel, review of law enforcement databases, and knowledge gained through training and experience.

5.     This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

2

## JURISDICTION

6.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

7.      In or about December 2014, C.H., a resident of Reston, Virginia, met an unidentified individual using the name of Anthony Aldo ("Aldo") via Match.com, an online dating service provider.  Shortly thereafter, C.H. began communicating with Aldo via email, chat, telephone, and SMS text messages.  Specifically, C.H. communicated with Aldo via email from at least on or about December 9, 2014, continuing through at least on or about April 28, 2017.

8.      From at least approximately December 9, 2014 through January 21, 2015, C.H. communicated with Aldo at his initial email address: aldoanthony63@yahoo.com.  For example, on or about December 15, 2014, Aldo wrote, "...my name is Anthony Aldo a Fund Manager...I was employed by Agip investment international.  I relocated to Kent United Kingdom when I secured the Job but only worked with them for 9 years before resigning from the job.  The [sic] called me after two years and asked me if I can work with them as a Consultant Fund Manager from my home..."

9.      From at least approximately February 10, 2015 through April 28, 2017, C.H. communicated with Aldo at his primary email address: anthonyaldo280@yahoo.com.  For example, on or about February 23, 2015, Aldo wrote, "...I have made up my mind to resign from

3

the consultant fund managers job with Capital Funds Investment International the moment I return form [sic] Dubai like i told you before…I have more than $6,000,000.00 (Six Million Dollars) Magellan Capital worth of shares.  With this money, I can come back home to start a new life with you."

10.     On or about March 12, 2015, C.H. received an email from admin@capitalfundsinvst.com.  The email was from a purported representative of Capital Funds Investment International, based in Kent, United Kingdom.  The email stated, "…we have finally and conclusively carried out your share purchase instruction," referencing a "…meeting with [C.H.] being represented by MR ANTHONY ALDO A Consultant Fund Manager with AGIP Investment International…"  The email went on to inquire whether C.H. wished the company to "…issue you total Capital Funds Magellan share of 188,572…" under one certificate.

11.     Searches of public information suggest that the capitalfundsinvst.com public domain was created on March 12, 2015, the same day that C.H. received the first email from Capital Funds Investment International.  Further searches of public information suggest that Capital Funds Investment International (or Capital Fund Investment International) was associated with three different "whocallsme.com" or "male-scammers.com" complaints about online scams, at least one of which involved Match.com.

12.     On or about March 13, 2015,  C.H. received an email from Aldo's primary email address in which he directed C.H. to send an email to info@capitalfundsinvst.com, requesting "…the release of [C.H.'s] Magellan share capital for Share Sell Bid (SSB) as soon as the company can arrange it."

13.     On or about March 15, 2015, C.H. received an email from Aldo's primary email address in which he wrote, "The 188,572 Capital Funds Magellan share were all finally placed

4

for sale in your name at the rate of $62 per Magellan. The total sum realized from the share sell was $11,691,464 Dollars…" The above-referenced "male-scammers.com" complaint involved the exact same number of shares, share price, and amount of proceeds.

14.    On or about March 18, 2015, C.H. received an email from info@springdalecu.com. The email was from a purported representative of Springdale Credit Union PLC, based in Suffolk, United Kingdom. The email referenced account set-up procedures for C.H.'s "…transaction to the sum of $11,691,464.00…" It also required an "…Account Opening Deposit Payment of $28,600.00 USD…"

15.    Searches of public information suggest that the springdalecu.com public domain was created on March 11, 2015. Further searches of public information to date have yielded no additional record of a Springdale Credit Union PLC. For example, there is no record of the credit union in the Financial Services Register of the United Kingdom's Financial Conduct Authority.

16.    According to C.H., from approximately March 2015 through December 2015, Aldo convinced C.H. to sell C.H.'s condominium and send over $300,000 to various beneficiaries in the United States and elsewhere for account opening fees, tax/transfer/clearance fees, and other advance fees in order to access the purported proceeds from the sale of Aldo's stock. For example, on or about May 19, 2015, C.H. received an email from Aldo's primary email address in which he wrote, "SWEETHEART, YOU HAVE TO WIRE 50K IN EACH OF THE THREE ACCOUNT [sic] BELOW…" Aldo's email subsequently included wire instructions for three different bank accounts (three different beneficiaries) located in Indonesia. Aldo then wrote, "WIRE THE REMAINING 32K IN THIS ACCOUNT TO COMPLETE IT …" and included wire instructions for a different Indonesian account for one of the same three

5

beneficiaries. According to records from Wells Fargo Bank, C.H. complied with Aldo's instructions and wired $182,000 that day.

17.     According to C.H., in or before December 2015, Aldo provided C.H. with contact information for two other unidentified individuals going by the names of Larry Anderson ("Anderson") and Sandra Nelson ("Nelson"). Aldo represented that he had transferred the above-referenced proceeds to Anderson's and Nelson's employer, a service provider that specialized in providing immunity from taxation to diplomats. At or about that time, C.H. solicited the assistance of C.H.'s friend, J.V.R., in complying with Aldo's instructions.

18.     On or about December 14, 2015, C.H. received an email from Aldo's primary email address in which he provided wiring instructions for a bank account located in Indonesia in the name of F.S. According to records from USAA Federal Savings Bank, J.V.R. wired $4,500 to F.S.'s account the following day.

19.     On or about December 17, 2015, J.V.R. sent an email to Aldo's primary email address. Specifically, J.V.R. wrote, "I dialed 447978307323 and I can't get thru. Just let [C.H.] know what is what." Aldo replied, writing, "Dial like this +447978307323."

20.     On or about December 18, 2015, J.V.R. sent an email to Anderson at his personal email account: larry_anderson2000@yahoo.com. The email forwarded confirmation of the above-referenced $4,500 wire, stating, "Wire transfer to Anthony Aldo's business account."

21.     According to records from Bank of America, on or about December 21, 2015, C.H. wired another $10,000 to F.S.'s bank account located in Indonesia.

22.     On or about December 21, 2015, Anderson sent an email to J.V.R. stating, "...We have tried to reach [C.H.]...inform [C.H.] that the earlier [C.H.] tried [sic] to come and complete the process the better for [C.H.], to avoid demurrage on the consignment...[C.H.] must be the one

to come for for [sic] pick up hence [C.H.] is the beneficiary of the consignment,however [sic], [C.H.] should make sure the balance of the $15,000 is intact while [C.H.] is coming...as soon as [C.H.] comes and pay [sic] the money and the consignment is procured,the [sic] consignment will immediately hand over to [C.H.] with all the documentation to back it up."

23.     On or about December 22, 2015, C.H. sent an email to Anderson apologizing for the delay and stating that C.H. was still trying to raise the funds.  C.H. forwarded the email to Aldo the same day.

24.     According to C.H., in or about December 2015, C.H. traveled to New York, New York, met Nelson at a hotel room, and provided her with $10,000 in cash.  Nelson then provided C.H. with two cases full of $50 bills which C.H. understood to be the $11.7 million in proceeds from the sale of Aldo's shares.  However, after allowing C.H. to open the cases (with lock combinations previously provided by Aldo), upon seeing the contents (i.e., amount of money), Nelson stated that her company required an additional $10,000 in order to release the funds.

25.     According to C.H., throughout their online relationship, C.H. communicated with Aldo via chat room using the Yahoo Messenger platform.  For example, on or about May 11, 2016, in a chat session with Aldo using Yahoo Messenger user name "anthonyaldo716," C.H. wrote, "Told [Nelson] I had personal things with one of my children and could not come up with the money. She said call Mr Aldo. Then she said if I couldn't the government would take the unclaimed money."

26.     On or about March 14, 2017, in a chat session with Aldo using Yahoo Messenger user name "anthony aldo," C.H. asked, "How did [Anderson and Nelson] get involved anyway and what is the connection[?]"  Aldo responded, "because we wanted the funds delivered cash to you...we contacted the diplomatic delivery company."

27.    On or about May 18, 2016, C.H. received an email from an unidentified individual going by the name of Charles Rene ("Rene") using email address: rencharles111@gmail.com.  Specifically, Rene wrote, "If you can remember, I am one of the guards that came with Mrs. Sandra Nelson to the hotel on that day she brought the briefcase to you. Mrs. Sandra is an agent that was assigned for your consignment while I am a security guard that works permanently with TCC Cargo where your consignment is been [sic] held."  Rene subsequently wrote, "Here is my proposal.  I will help you to get your fund out of our company and send to you.  It is a risk on me but Ihave [sic] already mapped out my plans on how to get it done.  Butall [sic] I want from you is a compensation of $500,000.00 upon the receipt of the fund in your custody.  Most importantly, Mr. Aldo and Mrs. Sandra Nelson must not hear about this plan."

28.    On or about August 8, 2016, C.H. received an email from an unidentified individual going by the name of Christ Uba ("Uba") using email address: christuba101@gmail.com.  Specifically, Uba wrote, "You have gone through hell because of your fund valued US$11.3 milliondollars [sic] and you don't deserve such in anyway…I have been working for this storage house for 13 years where your fund has been.  It is my job to arrange consignments in our store which gave me the opportunity to have access to it…If you can keep this message very confidential even out from Mr. Anthony Aldo it will benefit to you positively."  Uba subsequently wrote, "I can assure you that I will bring your box in your home address of your choice if you can cooperate with me in this regard.  What I only want is for you to give me 30% of the total fund one you receive it."

29.    C.H. has maintained email, chat, telephone, and SMS text message correspondence with Aldo, Anderson, and Nelson, who continue to solicit an additional cash

payments to facilitate the release of funds. For example, on or about November 14, 2016, C.H. received an SMS text message from Anderson stating, "Listen just come to New York and pick up the consignment, we have concluded every arrangement to release the consignment to you, do not get [Aldo] involve [sic] until you pick up the consignment,you [sic] are beneficiary and not [Aldo]." On or about November 22, 2016, Anderson wrote, "Here again is my email. larry_anderson2000@yahoo.com." On or about November 24, 2016, Anderson wrote, "Your email received, contact [Nelson] to schedule you for pick up…"

30.    On or about March 14, 2017, C.H. spoke with Aldo on the telephone. During their conversations, Aldo solicited another $28,000 fee to release the funds. That same day, C.H. received an email re: "Account" from Aldo's primary email address in which he included wire instructions for a bank account in the name of U.M. at a bank located in Fayetteville, North Carolina. Even later that same day, in a chat session with Aldo using Yahoo Messenger user name "anthony aldo," C.H. asked, "What does [U.M.] have to do with the bank and the dealings…I want to send it directly to the people at the bank that have the funds." Aldo responded, "shes [sic] is like American Agent n [sic] contact…handles all transaction in America and Canada." Based on searches of law enforcement databases, I am aware that between June 2016 and January 2017, MoneyGram Payment Systems, Wal-Mart, and Food Lion all noted suspicious activity related to U.M.'s excessive money transfers to foreign countries including Nigeria, Ghana, and China.

31.    On or about March 27, 2017, in a telephone call with C.H., Anderson stated, "Listen you have to believe me because you've been to New York and you saw that money. And that money has no reason to leave New York without your permission…it was you who we met in New York…it was you who was presented as the beneficiary." Subsequently, C.H. asked,

"You believe in your heart that the 11 million 700 dollars is still in those cases?" Anderson

answered, "[C.H.], [C.H.], it is well intact." Later in the call, C.H. asked, "How much do you

need?" Anderson answered, "[C.H.], I've told you what is required is 22 thousand and you pick

up the consignment…100%…no mistake…guaranteed." C.H. then clarified, "I bring the 22

thousand cash and you will give me the two suitcases?" Anderson answered, "…you have my

word, 100%…I've told you my age, [C.H.]. I don't play games." Subsequently, C.H. asked,

"Can I work with [Nelson]?…I want to work with [Nelson]." Anderson answered, "[Nelson]

also want [sic] to work with you, please. I've already told [Nelson]. She'll work with you.

100%."

32.    On or about May 9, 2017, C.H. received three emails from Anderson, each of

which attached a picture of a case(s) containing purported United States currency.

33.    In general, an email that is sent to a Yahoo subscriber is stored in the subscriber's

"mail box" on Yahoo's servers until the subscriber deletes the email. If the subscriber does not

delete the message, the message can remain on Yahoo's servers indefinitely. Even if the

subscriber deletes the email, it may continue to be available on Yahoo's servers for a certain

period of time.

## BACKGROUND CONCERNING EMAIL

34.    In my training and experience, I have learned that Yahoo provides a variety of on-

line services, including email access, to the public. Yahoo allows subscribers to obtain email

accounts at the domain name yahoo.com, like the email accounts listed in Attachment A.

Subscribers obtain an account by registering with Yahoo. During the registration process, Yahoo

asks subscribers to provide basic personal information. Therefore, the computers of Yahoo are

likely to contain stored electronic communications (including retrieved and unretrieved email for

10

Yahoo subscribers) and information concerning subscribers and their use of Yahoo services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

35.     A Yahoo subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Yahoo. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

36.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that, even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

37.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account

11

(including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

38.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

39.     This application seeks a warrant to search all responsive records and information under the control of Yahoo, a provider subject to the jurisdiction of this court, regardless of where Yahoo has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Yahoo's possession, custody, or

control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States. [1]

  40. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account, along with the time and date of that access. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account

---

[1] It is possible that Yahoo stores some portion of the information sought outside of the United States. In <u>Microsoft Corp. v. United States</u>, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Yahoo. The government also seeks the disclosure of the physical location or locations where the information is stored.

access and use relating to the crime under investigation. This geographic and timeline
information may tend to either inculpate or exculpate the account owner. Additionally,
information stored at the user's account may further indicate the geographic location of the
account user at a particular time (*e.g.*, location information integrated into an image or video sent
via email). Last, stored electronic data may provide relevant insight into the email account
owner's state of mind as it relates to the offense under investigation. For example, information in
the email account may indicate the owner's motive and intent to commit a crime (*e.g.*,
communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications
in an effort to conceal them from law enforcement).

## CONCLUSION

41.    Based on the forgoing, I request that the Court issue the proposed search warrant.
Because the warrant will be served on Yahoo, who will then compile the requested records at a
time convenient to it, reasonable cause exists to permit the execution of the requested warrant at
any time in the day or night.

Respectfully submitted,

Michael J. McGillicuddy
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ___MAY 22 ND___, 2017
                                          /s/
                              Theresa Carroll Buchanan
                              United States Magistrate Judge

Honorable Theresa Carroll Buchanan
UNITED STATES MAGISTRATE JUDGE

14

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following email and/or chat addresses that are stored at premises owned, maintained, controlled, or operated by Yahoo! Inc., a company headquartered at 701 First Avenue, Sunnyvail, California 94089:

- aldoanthony63@yahoo.com

- anthonyaldo280@yahoo.com

- "anthonyaldo716" (Yahoo Messenger user name)

- "anthony aldo" (Yahoo Messenger user name)

- larry_anderson2000@yahoo.com

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by Yahoo! Inc. (the "Provider")

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails and/or chat messages associated with the account, including stored or preserved copies of emails and/or chat messages sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.    The types of service utilized;

d.    All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.    All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken; and

f.    For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1349 (Conspiracy) and 18 U.S.C. § 1343 (Wire Fraud) on or after November 1, 2014, those violations involving unidentified individuals using the names of Anthony Aldo, Larry Anderson, Sandra Nelson, Charles Rene, and Christ Uba including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Communications with C.H. and/or J.V.R.;

(b) Communications related to AGIP Investment International, Capital Funds Investment International, Capital Funds Magellan shares, or Springdale Credit Union PLC;

(c) Evidence indicating how and when the email and/or chat account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

(d) Evidence indicating the email and/or chat account owner's state of mind as it relates to the crime under investigation;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

2

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the

laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information

contained in this declaration is true and correct. I am employed by Yahoo! Inc. ("Yahoo"), and

my official title is _____. I am a custodian of records for Yahoo. I

state that each of the records attached hereto is the original record or a true duplicate of the

original record in the custody of Yahoo, and that I am the custodian of the attached records

consisting of _____ (pages/CDs/kilobytes). I further state that:

     a.     all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth, by, or from information transmitted by, a person with

knowledge of those matters;

     b.     such records were kept in the ordinary course of a regularly conducted business

activity of Yahoo; and

     c.     such records were made by Yahoo as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal

Rules of Evidence.

_____     _____

Date                                                     Signature